R.T. MARSHALL, Individually and as Trustee, R.T. Marshall Co., Inc., R.T. Marshall Property Management Inc., R.T. Marshall Realty, and Felix Kelley, Appellants,

v.

John MAHAFFEY and Denise Mahaffey, individually and as beneficiaries of the John D. Mahaffey Defined Contribution Pension Plan a/k/a John D. Mahaffey Defined Pension, Appellees.

No. 09–96–331 CV.

Court of Appeals of Texas, Beaumont.

Aug. 27, 1998.

Published in Part Pursuant to Tex. R. App. P. 90.

Rehearing Overruled Sept. 24, 1998.

Tom Alexander, Tom Alexander & Associates, Andrew C. Brown, Felix Kelley, Houston, for appellants.

John Milutin, Milutin & Associates, Sugar Land, for appellees.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

BURGESS, Justice.

### PART I

John and Denise Mahaffey brought suit against R.T. Marshall, Individually and as Trustee, R.T. Marshall Co., Inc., R.T. Marshall Property Management, Inc., R.T. Marshall Realty (collectively Marshall), Karen Flores, Felix Kelley and Gene Courtade seeking, inter alia, actual damages, exemplary damages, attorneys' fees, costs, and equitable relief. The suit alleged numerous causes of action, including breach of fiduciary duty, fraud, conversion, theft, embezzlement, unjust enrichment, slander, DTPA violations, breach of contract, negligence, and gross negligence. The trial court rendered judgment for the Mahaffeys. Marshall and Kelley appeal that judgment.[1]

John Mahaffey, a professional golfer, had a twenty-five year business relationship with Marshall, his financial manager. Courtade, who was non-suited without prejudice, was Marshall's accountant. Kelley practiced law and maintained an office within the offices of Marshall. Kelley advised Marshall on legal matters and represented John in his divorce from Susie Mahaffey, his second wife.

### VENUE

Marshall's first point of error claims the court erred in ruling on the Motion to Transfer Venue without notice or a hearing. Point of error two contends the court erred in overruling the Motion to Transfer Venue because mandatory venue lay in Harris County.

---

1. Flores does not appeal the $506.32 judgment against her.

*Kelley's Motion to Transfer Venue*

■ Although Kelley adopts Marshall's points of error one and two relating to venue, we overrule the Kelley points for failure to properly preserve appellate error. Kelley joined the first motion to transfer venue but not the amended motion. Kelley also filed a single motion to transfer which was denied without hearing by a written order signed three days after the motion was filed. Kelley never objected to the court's order and never secured a ruling on mandatory venue. Therefore, we overrule Kelley's points of error one and two.

*Preservation of Error*

■ The Mahaffeys argue Marshall waived any right to complain of venue by failing to obtain a hearing on the amended motion to transfer venue and in failing to move for continuance at the time of trial. We disagree.

Service of process was requested on each of the defendants at 3100 Richmond, Suite 500, Houston, Texas 77098. The Mahaffeys are residents of Montgomery County, Texas. The lawsuit was filed on January 2, 1996, in Montgomery County. On January 26, 1996, Courtade filed his Motion to Transfer Venue concurrently with his Original Answer. On January 29, 1996, Kelley filed his Motion to Transfer Venue with Original Answer subject to such motion. On January 29, 1996, a pleading was filed, titled, "DEFENDANTS, R.T. MARSHALL, R.T. MARSHALL CO., INC., FELIX KELLEY, AND GENE COURTADE'S MOTION TO TRANSFER VENUE TO HARRIS COUNTY TEXAS." Also on January 29, 1996, all defendants in the case at that time filed in one instrument, a general denial to plaintiffs's pleadings. On January 29, 1996, there was a written request for a hearing on the Motion to Transfer Venue at the court's earliest convenience on or after March 15, 1996.

On February 26, 1996, R.T. Marshall, R.T. Marshall Co., Inc., and R.T. Marshall Trustee, filed an additional Motion to Transfer Venue to Harris County, Texas, setting out, among other things, that "[a]ll the property including the real estate made the basis of this suit is located in Harris County, Texas,

specifically at 3100 Richmond Avenue, Houston, Harris County, Texas." The motion contended that no exception exists as to mandatory venue which would permit venue in any county other than Harris County, Texas. The February 22, 1996, transmittal letter for this motion again asked that the motion be set for a hearing at the court's earliest convenience on or after March 15, 1996. On April 23, 1996, Marshall acknowledged a hearing had been set on Courtade's Motion to Transfer Venue and requested the hearing be reset to sometime during the last three weeks of May.

On June 19, 1996, a sixth amended petition was filed naming R.T. Marshall, R.T. Marshall, Trustee, R.T. Marshall Co., Inc., R.T. Marshall Property Management Inc., R.T. Marshall Realty, Karen Flores, Felix Kelley, and Gene Courtade as defendants. On this same date, a hearing was held on certain motions filed by the Mahaffeys. During this hearing, Marshall again requested a setting on the motion to transfer venue. The trial proceeded to finality without a hearing on Marshall's motion to transfer venue.

It is clear that Marshall persistently and continuously urged the court to provide a hearing on the motion to transfer venue. Marshall took every action necessary to obtain a hearing on the motion to transfer venue. It is not the duty of a party or counsel to "demand" that the Court comply with the appropriate rules. In *Glover v. Moser,* 930 S.W.2d 940, 944 (Tex.App.— Beaumont 1996, writ denied), this Court discussed discretionary limitations upon trial courts in matters concerning venue. Though TEX.R.CIV.P. 84 provides a trial court discretion as to the order of hearing certain matters, excepted from such discretion are matters relating to special appearance and motions to transfer venue. TEX. R.CIV.P. 87(1) acts as a non-discretionary limitation on a trial court's consideration of venue matters. The rule requires that a trial court act "promptly" in these matters. Though often and repeatedly requested by Marshall, the court never set or heard the venue motion.

In this case, Marshall adequately and properly met the procedural requirements of Rule 87 by requesting a setting on the hearing. Marshall met the procedural requirement of TEX.R.APP.P. 52(a) by objecting on the record. Since the trial court did rule on Marshall's motion, albeit without a hearing, and denied the motion, the merits of the venue issue are properly before this Court.[2]

The Mahaffeys further contend Marshall failed to preserve error by not moving for a continuance, citing *Cliff Jones, Inc. v. Ledbetter*, 896 S.W.2d 417 (Tex.App.—Houston [1st Dist.] 1995, no writ), *Gentry v. Tucker*, 891 S.W.2d 766 (Tex.App.—Texarkana 1995, no writ), and *Gonzalez v. Nielson*, 770 S.W.2d 99 (Tex.App.—Corpus Christi 1989, writ denied), as authority for this proposition. *Nielson* is distinguishable because the party in that case failed both to request a setting and to move for continuance. In *Tucker*, no statement of facts was filed and the appealing movant did not demonstrate he had objected to trial on the merits without first requesting a ruling on the motion to transfer. *Ledbetter* is distinguishable because the trial court never ruled on the motion to transfer venue, and in our case the trial court did rule on the motion. In this instance, Marshall was not required to move for a continuance to preserve error on the issue of venue.

## Standard of Review

■ A statutory standard of review applies to the issue of whether a trial court errs in overruling a motion to transfer venue. "On appeal from the trial on the merits, if venue was improper it shall in no event be harmless error and shall be reversible error. In determining whether venue was or was not proper, the appellate court shall consider the entire record, including the trial on the merits." TEX.CIV.PRAC. & REM.CODE ANN. § 15.064(b) (Vernon 1986). There is no factual sufficiency review of the venue ruling. *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 758 (Tex.1993). "[I]f there is any probative evidence in the entire record, including trial on the merits, that venue was proper in the

county where judgment was rendered, the appellate court must uphold the trial court's determination." *Id.*

## Mandatory Venue—Land

■ The Mahaffeys argue that Marshall failed to specifically plead mandatory venue as required by TEX.R.CIV.P. 86(3)(b) ("Mandatory venue of the action in another county is prescribed by one or more specific statutory provisions which shall be clearly designated or indicated."). Marshall's motion to transfer venue states: "All the property including the real estate made the basis of this suit is located in Harris County, Texas...." TEX.CIV.PRAC. & REM.CODE ANN. § 15.011 (Vernon Supp.1998) provides: "Actions for recovery of real property or an estate or interest in real property, for partition of real property, to remove encumbrances from the title to real property, for recovery of damages to real property, or to quiet title to real property shall be brought in the county in which all or part of the property is located." Marshall met the pleading burden.

The Mahaffeys argue § 15.011 is inapplicable because the gravamen of Marshall's lawsuit was money damages, not recovery of Harris County property. They cite *Stiba v. Bowers*, 756 S.W.2d 835 (Tex.App.—Corpus Christi 1988, no writ), holding the dominant purpose of the suit determines venue. *Stiba* was decided before the enactment of § 15.004 which provides:

> In a suit in which a plaintiff properly joins two or more claims or causes of action arising from the same transaction, occurrence, or series of transactions or occurrences, and one of the claims or causes of action is governed by the mandatory venue provisions of Subchapter B, the suit shall be brought in the county required by the mandatory venue provision.

TEX.CIV.PRAC. & REM.CODE ANN. § 15.004 (Vernon Supp.1998) (footnote omitted).

Mahaffey's lawsuit asked the trial court to impose a constructive trust on property in

---

**2.** On July 3, 1996, in the middle of trial, the trial court announced: "I'm also denying your motion for change of venue to date, subject to your chance to put on evidence contra next time we're

in court. Okay? But as of this date, it is denied." From this statement by the trial court we can only assume that the trial court was agreeing to hear the motion to transfer venue, post-trial.

Harris County, not Montgomery County. The judgment imposes a constructive trust on real property in Harris County, not Montgomery County.

### § 15.011. Land

Actions for recovery of real property or an estate or interest in real property, for partition of real property, to remove encumbrances from the title to real property, for recovery of damages to real property, or to quiet title to real property shall be brought in the county in which all or a part of the property is located.

TEX.CIV.PRAC. & REM.CODE ANN. § 15.011 (Vernon Supp.1998).

■ We agree with Marshall that the mandatory venue provision applied pursuant to § 15.011, making venue proper in Harris County. Our inquiry does not end here, however. We recognize that "[i]f the plaintiff's chosen venue rests on a permissive venue statute and the defendant files a meritorious motion to transfer based on a mandatory venue provision, the trial court must grant the motion." *Wichita County, Texas v. Hart*, 917 S.W.2d 779, 781 (Tex.1996). However, where there is a conflict between two mandatory venue provisions, "[t]he general scheme of the venue statute is that plaintiffs may choose between two *proper* venues. *See Wilson*, 886 S.W.2d at 259–61."[3] *Wichita County, Texas v. Hart*, 892 S.W.2d 912, 920 (Tex.App.—Austin 1994), *rev'd on other grounds*, 917 S.W.2d 779 (Tex.1996).[4] The Mahaffeys argue their choice of venue is supportable under another mandatory venue provision.

### *Mandatory Venue—Slander*

■ Specifically, the Mahaffeys claim there is evidence in the record of slander. TEX.CIV.PRAC. & REM.CODE ANN. § 15.017 (Vernon 1996) provides:

### § 15.017. Libel, Slander, or Invasion of Privacy

**3.** *Wilson v. Texas Parks and Wildlife Dept.*, 886 S.W.2d 259 (Tex.1994).

**4.** The Supreme Court disagreed with the Court of Appeals conclusion that both venue provisions in question were mandatory and found one to be

A suit for damages for libel, slander, or invasion of privacy shall be brought and can only be maintained in the county in which the plaintiff resided at the time of the accrual of the cause of action, or in the county in which the defendant resided at the time of filing suit, or in the county of the residence of defendants, or any of them, or the domicile of any corporate defendant, at the election of the plaintiff.

Section 15.017 "is a 'mandatory' venue provision. *See* TEX.R .CIV.P. 87.2(a) [sic]." *Acker v. Denton Publ'g Co.*, 937 S.W.2d 111, 114 (Tex.App.—Fort Worth 1996, no writ). We therefore must review the entire record, including the trial on the merits, and determine whether there is any probative evidence supporting mandatory venue under § 15.017. *See Ruiz*, 868 S.W.2d at 757–58.

### The Record

In their Sixth Amended Original Petition, the Mahaffeys pleaded they are residents of Montgomery County and that the defendants participated in the slander of "one or more of the [Mahaffeys]." In its judgment, the trial court found the defendants liable for wilful and intentional injury to the Mahaffeys and found the Mahaffeys sustained "actual noneconomic compensatory damages in the amount of $1,000,000.00 (of which $200,000.00 was sustained by Denise Mahaffey . . .)."

Several witnesses testified to statements by Marshall about Denise Mahaffey. That evidence is set forth below.

Harold Hutchins, Chief Financial Officer of Snake Eyes Golf Clubs, testified as follows:

Q Did he give you any indication or state to you, sir, why he took the money out?

A Yes. He told me that John—he took the—took the money out—John had gone through a divorce and married a—another wife, I guess is the proper way to say that.

Q Denise?

permissive—thus the mandatory provision trumped the permissive provision. *Wichita County, Tex. v. Hart*, 917 S.W.2d 779, 781–82 (Tex.1996).

A Denise—that he had married Denise, and he did not trust Denise, that he wanted to protect this money from John and Denise and because of a lack of trust.

Q Okay. Sir, and I want to ask you very specifically, because you have told me certain statements that he made about Denise. Would you tell this court what Mr. Marshall said about Denise Mahaffey at that meeting?

A He—you know, set me down and—in his office in private, away from everybody else. And he said, "You need to know," he said, "the reason I did this is because John met Denise in a bar and that she's—I don't trust her. I think she's sleazy"—and excuse me, Denise, but he said, I think she's a slut and she's just after his money and she's—she's a gold digger."

Felix Kelley testified:

Q Are you aware or did you ever over-hear Mr. Marshall make any derogatory, defamatory comments about John or Denise Mahaffey?

A Well . . .

Q About anything at any time. And you are under oath, sir.

A Uh-huh. I think he had made a remark that—that Denise had been working at—at a Trophy Club—I think he thought was not proper.

Q Okay. Well, is that how he put it, "I don't think that's proper" or did he call her a name?

A I don't recall him calling her a name.

Q You really don't? Do you need me to suggest some names, let you pick one? Did he call her a slut?

A He might have.

Q Did he call her sleazy?

A I can't specifically recall.

Q Did he call her a whore?

A I don't recall him calling—no, he didn't.

Q Did he ever call her anything kind?

A I can't recall.

Q Did he ever say to you that he didn't trust her?

A Yes, I think he did say that.

Q Did he make it very clear to you that he did not like her, didn't trust her, and that you should not like her and you should not trust her?

A Well, he didn't try and—he never directed me not to trust her or anything like that. He just said—

Q The other half of my question is true. He made it very clear he didn't trust her, didn't like her, thought she was a gold digger, wanted to get all of John's money, things like—things you've heard in this court that—

A I think at the time of their marriage that that was—

Q That's what he said?

A Right. . . .

The testimony of Denise Mahaffey was:

Q Did you know and learn through the years of your marriage with John that Mr. Marshall was slandering you?

A Yes.

According to Gene Courtade:

Q Okay. Since you last testified, do you recall any other statements that Mr. Marshall said about Denise or John Mahaffey that you would consider derogatory or defamatory?

A Only thing I know is I know that he was against John's marriage to Denise. There was no secret about that. And I know that—that he objected to John—he didn't think it was right that she was a—a table dancer, as he said. That's what I had heard there. And he was just very strong against it. But as far as any of—some of the remarks that I heard he told Hutchins, I did—I don't recall ever having heard him say that. I mean I know that he made remarks against her, but I don't—I couldn't say specifically anything.

R.T. Marshall testified:

Q Do you remember having any discussions with Mr. Courtade or Mr. Kelley concerning your opinion about Denise Mahaffey?

A Yes.

Q Do you remember telling them that you thought she was a slut?

A Don't remember that.

Q Did you say that?

A Not that I can remember.

Q Did you think that?

A I don't know.

Q Do you remember telling either of those gentlemen or anybody else, sir, that you thought she was a sleaze?

A I don't remember that.

Q Do you deny it?

A No.

John Mahaffey testified he and his wife Denise live at 29 Cokeberry Street, The Woodlands, Texas.

During final argument, counsel for the Mahaffeys made the following statements:

- "Mr. Courtade also testified and confirmed the slanderous comments that Mr. Marshall had made about Denise Mahaffey."

- "He [Felix Kelley] also proved up the slanderous comments that Mr. Marshall has made about Denise. . . ."

- "He [Harold Hutchins] confirmed some slanderous comments that Mr. Marshall had made against Denise Mahaffey."

- "He [Marshall] admitted some slanderous comments that were made about Denise. . . ."

- ". . . in addition to a finding of slander against Denise Mahaffey and damages to her for that."

### Elements of Slander

 Slander is a defamatory statement that is communicated or published to a third person without legal excuse. *Campbell v. Salazar*, 960 S.W.2d 719, 725 (Tex.App.—El Paso 1997, writ denied). A statement that tends to injure a person's reputation, exposing her to public hatred, contempt, ridicule, or financial injury is defamatory. *Id.* (citing *Duran v. Furr's Supermarkets, Inc.* 921 S.W.2d 778, 792 (Tex.App.—El Paso 1996, writ denied); TEX.CIV.PRAC. & REM.CODE ANN. § 73.001 (Vernon 1997); and *Einhorn v. LaChance*, 823 S.W.2d 405, 410–11 (Tex.App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.)).

A statement is also defamatory if it tends to impeach that person's honesty, integrity, or virtue. *Abbott v. Pollock*, 946 S.W.2d 513, 519 (Tex.App.—Austin 1997, writ denied) (citing *Free v. American Home Assurance Co.*, 902 S.W.2d 51, 54 (Tex.App.—Houston [1st Dist.] 1995, no writ)). Imputation of sexual misconduct is slander per se and thus actionable without proof of damage. *Gray v. HEB Food Store # 4*, 941 S.W.2d 327, 329 (Tex.App.—Corpus Christi 1997, writ denied); *Villasenor v. Villasenor*, 911 S.W.2d 411, 418 (Tex.App.—San Antonio 1995, no writ); *Bolling v. Baker*, 671 S.W.2d 559, 570 (Tex.App.—San Antonio 1984, writ dism'd w.o.j.).

 Publication means to orally communicate defamatory statements to a third person who is capable of understanding, and did understand, their defamatory import. *Campbell*, 960 S.W.2d at 726 (citing *Marshall Field Stores, Inc. v. Gardiner*, 859 S.W.2d 391, 396 (Tex.App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.); *Houston Belt & Terminal Ry. v. Wherry*, 548 S.W.2d 743, 751 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.)). *See also Ramos v. Henry C. Beck Co.*, 711 S.W.2d 331, 335 (Tex.App.—Dallas 1986, no writ). "If a reasonable person would recognize that his act creates an unreasonable risk that the defamatory statements will be communicated to a third party, his conduct is negligent communication, which amounts to publication as much as an intentional communication." *Campbell*, 960 S.W.2d at 726 (citing *Galveston County Fair & Rodeo, Inc. v. Glover*, 880 S.W.2d 112, 119 (Tex.App.—Texarkana 1994), *writ denied per curiam*, 940 S.W.2d 585 (Tex.1997); *First State Bank of Corpus Christi v. Ake*, 606 S.W.2d 696, 701 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); *Marshall Field Stores, Inc.*, 859 S.W.2d at 396; *Chasewood Constr. Co. v. Rico*, 696 S.W.2d 439, 445–46 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.)). The plaintiff in a slander action must be the person about whom the allegedly defamatory statements are made. *Campbell*, 960 S.W.2d at 726. But publication does not require the plaintiff be named if those who know the plaintiff and are acquainted with him understand that the defamatory publica-

tion referred to him. *Id.* (citing *Glover*, 880 S.W.2d at 119; *Newspapers, Inc. v. Matthews*, 161 Tex. 284, 339 S.W.2d 890, 894 (1960); *Davis v. Davis*, 734 S.W.2d 707, 711 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.)).

## Standard of Review

 As the court in *Villasenor*, 911 S.W.2d at 418 noted, "Whether the words are capable of a defamatory meaning is a question of law based upon how a person of ordinary intelligence would perceive the entire statement in light of the surrounding circumstances. *Diaz v. Rankin*, 777 S.W.2d 496, 498–99 (Tex.App.—Corpus Christi 1989, no writ)." *See also Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 654–55 (Tex.1987); *Campbell*, 960 S.W.2d at 725; *Duran*, 921 S.W.2d at 792; *Einhorn*, 823 S.W.2d at 411. "Only when the court determines the complained of language to be ambiguous or of doubtful import should a jury be permitted to determine the statement's meaning and the effect the statement has on the ordinary reader or listener. *Duran*, 921 S.W.2d at 792; *see Musser*, 723 S.W.2d at 655." *Campbell*, 960 S.W.2d at 725. Additionally, an opinion that implies false statements of objective fact is slander. *Shearson Lehman Hutton, Inc. v. Tucker*, 806 S.W.2d 914, 920 (Tex.App.—Corpus Christi 1991, writ dism'd w.o.j.) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990); *First State Bank of Corpus v. Ake*, 606 S.W.2d 696, 699 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.)).

## Application

 We find the statements by Marshall, as set forth above, are capable of the defamatory meaning the Mahaffeys attribute to them. *See Campbell*, 960 S.W.2d at 725–26. They question Denise Mahaffey's honesty, integrity, and virtue, and impute sexual misconduct. The record supports that the statements were published to third persons who understood their defamatory import and further understood the statements referred to Denise Mahaffey. Marshall's language was not ambiguous or doubtful and implies false statements of objective fact.[5] The record, therefore, supports the existence of a cause of action for slander. *See Acker*, 937 S.W.2d at 116–17. The slander cause of action is governed by the mandatory venue provision. *Id.* at 114. Thus, Marshall was not forced to trial in a county of improper venue. *Id.* at 116–17.

The conflict between two mandatory venue provisions allowed the Mahaffeys to choose between the two proper venues—and they elected Montgomery County. Accordingly, venue was proper in Montgomery County

 Consequently, Montgomery County is the proper venue for the other claims raised in the Mahaffeys' petition, as provided in TEX.CIV.PRAC. & REM.CODE ANN. § 15.005 (Vernon Supp.1998):

### § 15.005. Multiple Defendants

In a suit in which the plaintiff has established proper venue against a defendant, the court also has venue of all the defendants in all claims or actions arising out of the same transaction, occurrence, or series of transactions or occurrences.

Furthermore, "[i]f venue as to one cause of action is proper in the county in which suit was brought, then all properly joined causes of action against the defendant should be maintained in that county to avoid a multiplicity of suits, regardless of the relative size of recovery sought in the various causes of action." *Lindsey v. Sec. Sav. Ass'n*, 556 S.W.2d 570 (Tex.Civ.App.—Dallas 1977, no writ); *see also Mercantile Mortg. Co. v. University Homes, Inc.*, 663 S.W.2d 45, 48 (Tex.App.—Houston [14th Dist.] 1983, no writ) ("If venue is properly maintained as to one cause of action, it must be maintained as to all properly joined causes of action."); *Denton v. Brown*, 634 S.W.2d 386, 387 (Tex.App.—Waco 1982, no writ) ("[I]f venue is proper as to one of several causes of action, the other causes of action against the same defendants may be tried jointly to avoid a multiplicity of suits."). Therefore, the trial court did not commit reversible error in denying Marshall's motion to transfer venue. Marshall's first and second points of error relating to venue are overruled.

---

**5.** We note that Marshall does not raise truth as a defense to his statements.

AFFIRMED AND REFORMED IN PART; CONDITIONALLY AFFIRMED AND REFORMED IN PART.

## DISSENTING OPINION

I respectfully dissent to the majority's handling of the venue issue for the following reasons:

First, it is clear that the trial court never heard the appellants' Motion to Transfer Venue, but rather spontaneously overruled same; second, following a bench trial, the trial court entered sixteen (16) pages of findings of fact and conclusions of law, which nowhere even remotely mention appellees slander allegations, for indeed, from the record, slander was not tried in this case. Even by expansion of judicial imagination, taking portions of the evidence, and attributing thereto some evidence of slanderous commentary, the record is nevertheless void of the statutorily required evidence that plaintiffs resided in Montgomery County "at the time of the accrual of the cause of action." ... TEX.CIV.PRAC. & REM.CODE ANN. § 15.017 (Vernon 1986).

TEX.R.CIV.P. 296, 297, 298, 299 and 299a, govern the trial court's filing of findings of fact and conclusions of law. From a practice standpoint, we know that normally following bench trials where findings of fact and conclusions of law are requested, counsel for the prevailing party prepares same for the court. In the present case, it is unclear whether counsel for appellees prepared same or whether the trial court did so. If counsel for appellees did so, slander was not a finding urged to the trial court. If the trial court prepared same, again slander was not a finding. Regardless, TEX.R.CIV.P. 298 and 299 provide for "additional" or "amended" or "omitted" findings.

This leads to but one conclusion, appellees abandoned their cause of action for slander. To now, on appeal, attempt to revive that claim seems inappropriate, albeit, for venue purposes. The trial court made very specific findings: actual fraud, constructive fraud, conversion, breach of fiduciary duties, breach of trust, negligent and intentional false representations, misapplication of fiduciary property, deception, willful and intentional injuries, tortuous interference, obtaining money and property under false pretense, breach of contract, false misleading and deceptive acts, theft, embezzlement, conspiracies, unconscionable conduct as a trustee, breach of confidential relationship and unjust enrichment. The specificity of findings by the trial court clearly excludes slander as an action in this suit. I think the majority goes too far in extrapolating evidence in support of a pleading which was apparently abandoned.

In *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 758 (Tex.1993), our Supreme Court held:

> Therefore, if there is any probative evidence in the entire record, including trial on the merits, that venue was proper in the county where judgment was rendered, the appellate court must uphold the trial court's determination. If there is no such evidence, the judgment must be reversed and the case remanded to the trial court. The error cannot be harmless, according to the statute. If there is any probative evidence that venue was proper in the county to which transfer was sought the appellate court should instruct the trial court to transfer the case to that county.

The evidence cited in the majority opinion may be probative to other issues in the case. However, since slander was not an issue, the recited evidence cannot be probative thereto.

I would reverse with instruction that the cause be transferred to Harris County, Texas.