In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-08-056 CV


____________________



IN RE DOLE FOOD COMPANY, INC. and JAMES TEATER






Original Proceeding






OPINION


 In this mandamus proceeding, Dole Food Company, Inc. and James Teater challenge
the overruling of their motion to transfer venue in a suit filed by Provost Umphrey Law Firm,
L.L.P. Because venue is mandatory in the defendant's county of residence, we conditionally
grant relief. 

 Provost Umphrey's second amended petition contains extensive factual allegations
and alleges mandatory and permissive venue lie in Jefferson County. (1) See Tex. Civ. Prac.
& Rem. Code Ann. §§ 15.002(a)(1), 15.017 (Vernon 2002). According to the petition,
throughout Central America Provost Umphrey represents thousands of banana workers who
were exposed to a nematicide banned in the United States since 1977 but allegedly used by
Dole in its banana plantations in Nicaragua and other foreign countries. Provost Umphrey
asserts that it has signed legal services contracts with several thousand Nicaraguan citizens.
Provost Umphrey obtained a judgment in Nicaragua in the amount of $97,000,000 on behalf
of 150 workers exposed to a harmful chemical while working for Dole. Provost Umphrey
claims that Michael Carter, who is a California attorney acting as Vice President and General
Counsel of Dole, began making public appearances with Victorino Espinales shortly after
Provost Umphrey obtained the $97,000,000 judgment for 150 of its clients. Provost
Umphrey alleges Espinales is a nonlawyer political activist who claims to represent 70% of
the Nicaraguan banana workers and is the person who allegedly made the defamatory
statements that are one of the subjects of this litigation. (2) According to the petition, Espinales
informed Provost Umphrey's local counsel that sixty-eight of Provost Umphrey's clients,
sixty-six of whom would presently be summoned to provide testimony and sterility testing
in a Nicaraguan court, had revoked Provost Umphrey's power of attorney in favor of
Espinales. Provost Umphrey alleges that Dole is also offering "testing" and a financial
settlement to all its Honduran banana workers, including several thousand who have
contracts with Provost Umphrey and who filed suit in California. 

 Provost Umphrey sues Dole, Carter, and Teater for tortious interference with existing
contracts and with the business relationship between Provost Umphrey and its Nicaraguan
clients. (3) Provost Umphrey also asserts a cause of action for tortious interference with a
prospective business relationship between Provost Umphrey and other Nicaraguan banana
workers. Provost Umphrey also sues Dole, Carter, and Teater for defamation and for
business disparagement and claims Dole, Carter, and Teater engaged in a civil conspiracy to
accomplish an unlawful purpose through unlawful means. 

 Provost Umphrey requests the trial court to issue fourteen broad restraints on the
conduct of Dole, Carter, and Teater, including: (1) attempting to communicate with certain
persons identified as Provost Umphrey's clients; (2) making public announcements or
communications designed to detract from Provost Umphrey or to encourage any client to
either fire Provost Umphrey or to repeal the law under which Provost Umphrey has been
pursuing compensation on behalf of the banana workers; (3) from making any public
announcement or communication sent in general to banana workers in Central America
regarding testing or a program that requires worker participation or contact by Carter, Teater,
or any person acting for them or for Dole; (4) negotiating with anyone who cannot be
positively identified as unrepresented by Provost Umphrey; and (5) communicating with any
foreign government, including the governments of Panama, Costa Rica, Nicaragua,
Honduras, and Guatemala, including communications for a resolution that interferes with
Provost Umphrey's signed contracts with Central American banana workers. Provost
Umphrey also requests a court order for defendants to comply with particular sections of the
California and Texas Rules of Professional Conduct and the Nicaraguan Criminal Code. The
firm also sues for damages on each of its claims. 

 Teater and Dole filed motions to transfer venue. They deny that a substantial part of
the events giving rise to the lawsuit occurred in Jefferson County. Because Teater is a
natural person who resides in Harris County and the suit is primarily injunctive, Teater and
Dole allege that mandatory venue is in Harris County. (4) See Tex. Civ. Prac. & Rem. Code
Ann. § 15.016 (Vernon 2002), § 65.023 (Vernon 1997). In its response to the motion to
transfer venue, Provost Umphrey argues that venue is proper in Jefferson County because
Provost Umphrey resides there, that harm was inflicted upon Provost Umphrey in Jefferson
County because it maintains the original signed contracts there, that Provost Umphrey's
claims include defamation, and that its request for an injunction is merely incidental to its
action for damages. The defendants in turn argue that Provost Umphrey failed to plead any
defamatory act by any of the named defendants, that the alleged defamatory statements were
not substantively defamatory, and that Provost Umphrey could not rely on a venue provision
applicable to natural persons. Provost Umphrey responds by arguing that the defendants
waived their motions to transfer venue by failing to schedule a hearing on their motions in
a timely manner. The trial court denied Dole's and Teater's motions to transfer venue. 

 In their first issue, Dole and Teater contend the mandatory venue provision for suits
for injunction applies in this case. See id. §§ 15.016, 65.023. "[T]he injunction venue statute
applies only to suits in which the relief sought is purely or primarily injunctive." In re Cont'l
Airlines, Inc., 988 S.W.2d 733, 736 (Tex. 1998) (orig. proceeding). The injunction venue
statute applies when "the petition discloses that the issuance of a perpetual injunction is the
primary and principal relief sought[.]" Brown v. Gulf Television Co., 157 Tex. 607, 306
S.W.2d 706, 708 (1957). If the nature of the suit determines venue, the court considers the
nature of the principal right asserted and the relief sought for the breach. Id. The plaintiff
may have a choice between legal and equitable remedies, but in cases where the plaintiff
alleges it has no adequate remedy at law and hence is entitled to injunctive relief, the plaintiff
has chosen the equitable relief as his primary remedy and venue is controlled by the
injunction statute. Id. at 709.

 Provost Umphrey argues that injunction is not the primary relief sought because a
judgment for damages will act as a greater deterrent. As authority, Provost Umphrey cites
Hogg v. Professional Pathology Associates, P.A., 598 S.W.2d 328, 330 (Tex. Civ. App.--Houston [14th Dist.] 1980, writ dism'd). Hogg involved the violation of a restrictive
covenant by a pathologist who continued to provide pathology services to the client hospital
after the pathologist and hospital terminated their respective contracts with the pathology
group. Id. at 329 Finding it significant that only injunctive relief was sought against the
hospital while a $180,000 damage award was sought against the pathologist, the court
reasoned that a substantial damage award would be the greater deterrent to other employees
and therefore qualified as the remedy of greatest importance. Id. at 329-30. The injunctive
relief sought in Hogg was essentially specific performance of contractual rights. See
Karagounis v. Bexar County Hosp. Dist., 70 S.W.3d 145, 147 (Tex. App.--San Antonio 2001,
pet. denied). Thus, the principal right asserted in Hogg was contractual and the true nature
of the suit was not injunctive. Here, Provost Umphrey is not seeking to enforce a contract
against a signatory, rather, it is seeking to protect its existing and potential contracts from
interference by strangers to the contract. The relief being sought is truly injunctive, as
Provost Umphrey asks the trial court to prohibit the defendants from making any public
communications or communications with governments that would encourage repeal of the
law Provost Umphrey invokes in pursuing banana workers litigation, or attempting a political
resolution of the injuries sustained by banana workers on Dole's plantations. Unlike the
other doctors in Hogg, there is no other identified banana-grower to deter through a judgment
for damages, only Dole, which would be more effectively deterred by an injunction. The
injunctive relief sought in this case is not clearly ancillary, incidental, or adjunctive to
Provost Umphrey's request for damages. 

 In this case, Provost Umphrey asserts that the defendants are presently interfering with
their existing contracts and with prospective contracts, that the interference is ongoing, that
"[sixty-eight] clients have attempted to fire Plaintiff in response to Defendants' statements
in the press and to the clients," that the defendants intend to "siphon all Nicaraguan clients
away during active litigation," that "approximately [2,000] clients are in trial" and if Provost
Umphrey loses those clients it will be "unable to complete their cases under Law 364 during
the limited trial period," potentially exposing Provost Umphrey to claims of malpractice.
According to Provost Umphrey's petition, "many of these damages are not readily measured
by any certain pecuniary standard." Provost Umphrey alleges a permanent injunction is
necessary. 

 Provost Umphrey's pleadings describe an ongoing interference with both existing
clients and potential clients through statements and offers of conciliation published through
the press. Rather than seeking to hold the parties to the status quo until the issues in
controversy are resolved, the plaintiff seeks substantial, permanent restraints on the
defendants' speech and conduct. Provost Umphrey admits in its pleadings that its damages
resulting from the defendants' interference with Provost Umphrey's existing and potential
contracts cannot be ascertained by any certain pecuniary standard. Thus, the request for an
injunction is not merely ancillary but comprises the primary relief sought. Section 65.023
applies to this case. See Tex. Civ. Prac. & Rem. Code Ann. § 65.023 ("a writ of injunction
against a party who is a resident of this state shall be tried in a district or county court in the
county in which the party is domiciled."). 


 Provost Umphrey also sues Dole, Carter and Teater for defamation. 


 A suit for damages for libel, slander, or invasion of privacy shall be brought
and can only be maintained in the county in which the plaintiff resided at the
time of the accrual of the cause of action, or in the county in which the
defendant resided at the time of filing suit, or in the county of the residence of
defendants, or any of them, or the domicile of any corporate defendant, at the
election of the plaintiff.


Id. at § 15.017. Because a mandatory venue statute also applies to a cause of action for
defamation, Provost Umphrey argues it could choose between the different venues provided
by the two statutes. The general scheme of the venue statutes permits the plaintiff to choose
between two conflicting mandatory venue provisions. Marshall v. Mahaffey, 974 S.W.2d
942, 947 (Tex. App.--Beaumont 1998, pet. denied). In Marshall v. Mahaffey, we held the
plaintiffs could choose between the mandatory venue provisions for suits to recover real
property and slander. Id. at 947, 950. We reasoned that neither mandatory venue provision
prevailed over the other, so the plaintiffs could maintain their suit under either section 15.011
or section 15.017 of the Texas Civil Practice and Remedies Code. Id. 

 In this case, however, one of the mandatory venue provisions originates from outside
Chapter 15 of the Texas Civil Practice and Remedies Code. "An action governed by any
other statute prescribing mandatory venue shall be brought in the county required by that
statute." Tex. Civ. Prac. & Rem. Code Ann. § 15.016. "Section 15.016 provides that if an
action is governed by a separate mandatory venue provision, then the action shall be brought
in the county required by the separate venue provision." In re Texas Dep't of Transp., 218
S.W.3d 74, 76 (Tex. 2007) (orig. proceeding). In Texas Dep't of Transp., the Supreme Court
held that venue for the plaintiffs' Tort Claims Act cause of action against the Texas
Department of Transportation was proper in Gillespie County, not Travis County as alleged
by the plaintiffs, and therefore did not consider the effect of the mandatory venue section
asserted by the other defendant. Id. at 76-77. Although Gillespie County would have been
the proper county of venue under either mandatory venue section, the Supreme Court did not
reach Gillespie County's section 15.015 argument because the operation of section 15.016
caused venue for the case to be determined by section 101.102(a) of the Texas Civil Practice
and Remedies Code. Id. at 76, n.1. Applying the principles there expressed to this case, the
separate mandatory venue provision for injunction suits prevails over the venue provision
found in section 15.017. 

 Furthermore, the application of a mandatory venue provision depends upon the venue
facts of properly pleaded causes of action. See Tex. R. Civ. P. 87(2)(b). Provost Umphrey
alleges venue is proper in the county of its residence because it asserts defamation claims
against Dole, Carter, and Teater. According to Provost Umphrey's petition, all of the alleged
defamatory statements were published by Espinales, who is not a defendant in this suit. 

 In its petition, Provost Umphrey identifies the three allegedly defamatory statements:
(1) that the plaintiff "lied and swindled them [the Plaintiff's clients]," (2) that the plaintiff
created false expectations in plaintiff's clients through "manipulation and deceit," (3) that
plaintiff had been shown "impotent and incapable to win." Elsewhere in its petition, Provost
Umphrey alleges that the speaker of these statements was Espinales, who is not one of the
defendants in this suit. Provost Umphrey contends Dole, Carter, and Teater are liable for
defamation for statements made by Espinales under a concert of action theory authorized by
section 876 of the Restatement. See Restatement (Second) of Torts § 876 (1977). This
section of the Restatement has not been adopted in Texas and "whether such a theory of
liability is recognized in Texas is an open question." Juhl v. Airington, 936 S.W.2d 640, 643
(Tex. 1996). The first means of imposing liability under section 876 is when the defendant
"does a tortious act in concert with the other or pursuant to a common design with him[.]" 
Restatement (Second) of Torts § 876(a). That "requires at least a tacit agreement to
participate in some tortious act," in this case, at least one of the three defamatory statements
of Espinales. Juhl, 936 S.W.2d at 643. The only fact alleged regarding Dole, Carter, or
Teater's involvement in Espinales's statements is Carter's presence at the press conference
in which Espinales stated that the lawyers who took the Nemagon (5) cases "lied and swindled
them." "[I]t is essential that the conduct of the actor be in itself tortious." Restatement
(Second) of Torts § 876 cmt. a. No tortious act by Carter, Teater, or any agent of Dole is
described in Provost Umphrey's petition in connection with the making of defamatory
statements by Espinales. (6)

 The second means of imposing liability under section 876 of the Restatement arises
if the defendant "knows that the other's conduct constitutes a breach of duty and gives
substantial assistance or encouragement to the other so to conduct himself[.] Restatement
(Second) of Torts § 876(b). This subsection "imposes liability not for an agreement, but
for substantially assisting and encouraging a wrongdoer in a tortious act" and requires the
defendant to know that the other party is breaching a duty and intends to assist that party's
actions. Juhl, 936 S.W.2d at 644. Again, the only act of encouragement alleged by Provost
Umphrey is Carter's presence at a press conference at which Espinales made an allegedly
defamatory statement. The factors identified in comment (d) of section 876 include: 1) the
nature of the wrongful act; 2) the kind and amount of the assistance; 3) the relation of the
defendant and the actor; 4) the presence or absence of the defendant at the occurrence of the
wrongful act; and 5) the defendant's state of mind. Id. (citing Restatement (Second) of
Torts § 876 cmt. d). Although presence is a factor to be considered in determining whether
the defendant provided the substantial assistance required to impose liability, that factor
alone does not justify imposition of liability in the absence of a high degree of risk to others. 
Id. at 644. Carter's conduct is "simply not the type of highly dangerous, deviant, or
anti-social group activity which was likely to cause serious injury or death to a person or
certain harm to a large number of people." (7) Id. at 645. 

 The third method for imposing liability under section 876 of the Restatement applies
when the defendant "gives substantial assistance to the other in accomplishing a tortious
result and his own conduct, separately considered, constitutes a breach of duty to the third
person." Restatement (Second) of Torts § 876(c). Provost Umphrey alleges Carter and
Teater have duties imposed upon them by virtue of their status as attorneys, and alleges that
Carter communicated with Provost Umphrey's clients by making statements to the press. 
Again, Provost Umphrey does not allege an activity that rises to the level of substantial
assistance. Juhl, 936 S.W.2d at 645. We conclude that Provost Umphrey has not asserted
a properly pleaded cause of action for defamation against any of the defendants in this suit. 
Because a cause of action for defamation was not properly pleaded as to any of the
defendants, Provost Umphrey cannot maintain venue pursuant to section 15.017 of the Texas
Civil Practice and Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann. § 15.017; Tex.
R. Civ. P. 87(2)(b).

 Finally, Provost Umphrey contends the relators waived relief by failing to pursue their
motions to transfer venue in a timely fashion. Teater filed his motion to transfer on June 20,
2006, notice of removal was filed the same day and the case was remanded to state court on
October 13, 2006. Dole filed its motion to transfer on December 1, 2006. Carter was served
with process through the Secretary of State on August 15, 2007, and filed a motion to transfer
subject to a special appearance on August 31, 2007. Provost Umphrey did not file its
response to the motions to transfer until November 14, 2007. A letter from counsel for
Provost Umphrey, which was offered during the hearing on the motions to transfer, stated
that the notice of hearing had been served on September 27, 2007. In the letter, counsel for
Provost Umphrey complained that the hearing had been set too soon and implied that he had
secured an agreement from counsel to refrain from setting dispositive motions--which
counsel apparently felt included the motions to transfer venue--on the heels of a discovery
extension agreed to by counsel. The trial court heard the motions to transfer on December
14, 2007, and signed its order on January 10, 2008. The motions were timely filed in due
order, but Provost Umphrey argues the relators' delay in setting the motions for a hearing
was so unconscionable that the trial court was justified in denying the motions to transfer on
that basis alone.

 The cases cited by Provost Umphrey do not support its position. In Scott v. Gallagher,
the appellate court held the inmate's filing of suit in a county other than county of
confinement did not deprive the trial court of jurisdiction. Scott v. Gallagher, 209 S.W.3d
262, 264-65 (Tex. App.--Houston [1st Dist.] 2006, no pet.). In Carlile v. RLS Legal
Solutions, Inc., the moving party waived its venue motion by filing motion for new trial on
summary judgment before obtaining ruling on motion to transfer. Carlile v. RLS Legal
Solutions, Inc., 138 S.W.3d 403, 408 (Tex. App.--Houston [14th Dist.] 2004, no pet.). In
Whitworth v. Kuhn, the appellate court stated that the trial court could have denied the motion
to transfer on the ground that the movant did not seek a hearing on the motion for over a
year, but also noted that the trial court did rule on the motion on its merits before ruling on
the motion for summary judgment. Whitworth v. Kuhn, 734 S.W.2d 108, 111 (Tex. App--Austin 1987, no writ). The appellate court affirmed the trial court's ruling because the
appellant failed to deny the appellee's pleaded venue allegation. Id. In Cliff Jones, Inc. v.
Ledbetter, the movant failed to obtain a ruling before the trial court rendered judgment. Cliff
Jones, Inc. v. Ledbetter, 896 S.W.2d 417, 418 (Tex. App.--Houston [1st Dist.] 1995, no writ). 
In Bristol v. Placid Oil Co., the appellate court held that a thirty-two month lapse between
filing a motion and obtaining a ruling did not affect waiver. Bristol v. Placid Oil Co., 74
S.W.3d 156, 159 (Tex. App.--Amarillo 2002, no pet.). 

 In this case, the trial court did not rule on the merits of the case before ruling on
Dole's and Teater's motions to transfer. Provost Umphrey has not identified any action taken
by Dole or Teater that is inconsistent with an intent to pursue the venue motion. In fact, the
lapse between filing Teater's motion to transfer and obtaining a hearing on the motions is
explained by the removal of the case to federal court, the delayed service on the third
defendant, and the timing of Provost Umphrey's response. The relators' actions in seeking
removal to another jurisdiction do not invoke the general jurisdiction of the court of filing
and are not inconsistent with a motion to transfer venue. Filing a notice of removal to federal
court, even before filing a motion to transfer, does not waive the venue motion. Toliver v.
Dallas Fort Worth Hosp. Council, 198 S.W.3d 444, 446-48 (Tex. App.--Dallas 2006, no
pet.). We note that the trial court did not rule that Dole and Teater waived their right to
transfer venue, and we hold that the trial court could not reasonably have based its ruling on
waiver. 

 The trial court's denial of the motions to transfer amounts to a "'clear and prejudicial
error of law,'" necessitating mandamus relief. In re Applied Chemical Magnesias Corp., 206
S.W.3d 114, 119 (Tex. 2006) (orig. proceeding) (quoting Walker v. Packer, 827 S.W.2d 833,
839 (Tex. 1992)). Accordingly, we conditionally grant the writ of mandamus and direct the
trial court to transfer venue to Harris County. The writ will issue only if the trial court fails
to comply.

 WRIT CONDITIONALLY GRANTED.

 PER CURIAM


Submitted on April 10, 2008

Opinion Delivered June 12, 2008


Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. Unless otherwise noted, all references in this Opinion to Provost Umphrey's
pleadings refer to the second amended petition.
2. Espinales is not a defendant in Provost Umphrey's suit against Dole, Teater, and
Carter. 
3. Teater is a partner with the law firm of Jones Day. 
4. Carter also filed a motion to transfer venue, subject to his special appearance. Carter
did not join the mandamus petition.
5. Nemagon is a trade name for a nematicide.
6. In its brief to this Court, Provost Umphrey assures that "[o]nce the parties can get
through Dole's baseless appeals, the Plaintiff will establish [Espinales] is, in essence, Dole's
stalking horse for Nicaragua." It did not, however, allege in its petition that Espinales was
in Dole's employ.
7. Provost Umphrey does not allege that Dole is presently exposing Provost Umphrey's
clients to Nemagon.