**Opinion filed August 7, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-25-00040-CV
_____

## IN RE SCOTTI CAMPBELL AND DIANA CAMPBELL

**Original Mandamus Proceeding**

## O P I N I O N

The Texas Civil Practice and Remedies Code provides that "[a]ctions for recovery of real property . . . or to quiet title to real property *shall* be brought in the county in which all or a part of the property is located." TEX. CIV. PRAC. & REM. CODE ANN. § 15.011 (West 2017) (emphasis added). This matter involves an attempt to recover and quiet title to real property that is located in Wheeler County. It pits a suit filed in the district court of the county where the land is located (Wheeler County) against a suit filed in the county court of the county where the deceased record owner of the land resided (Brown County) at the time of his death and where the decedent's probate was pending. In this regard, the district court in Wheeler County has already denied a request to transfer venue to Brown County. *See In re*

*Harbin*, No. 07-23-00437-CV, 2024 WL 3682791, at *1 (Tex. App.—Amarillo Aug. 6, 2024, no pet.) (orig. proceeding) (mem. op. on reh'g). This proceeding arises from the Brown County Court's denial of a motion to transfer venue to Wheeler County.

Relators Scotti Campbell and Diana Campbell (the Campbells) seek a writ of mandamus compelling the Honorable Shane Britton, the presiding judge of the Brown County Court, to (1) vacate its order denying the Campbells' motion and (2) sign an order granting either the motion to transfer venue or the plea in abatement based on dominant jurisdiction in Wheeler County. Real Party in Interest, Tammy Harbin, is the dependent administrator of the estate of Benny D. Eads. Harbin asserts that the mandatory venue statute is inapplicable because, among other things, the Brown County Court exercises exclusive jurisdiction over the case. We conditionally grant the Campbells' petition for writ of mandamus, concluding that the trial court clearly abused its discretion when it denied the Campbells' motion to transfer venue to Wheeler County.

*Factual and Procedural Background*

Benny D. Eads died on April 14, 2020. At the time of his death, Eads was a resident of Brown County. He also owned real property in Wheeler County consisting of approximately 480 acres. Following Eads's death, Jo Ann Jordan, who is Eads's sister-in-law, filed an application for letters of administration in the Brown County Court. Subsequently, Harbin, who is Eads's daughter, was substituted for Jordan as the dependent administrator of the estate.

Several months later, the Campbells filed a trespass-to-try-title suit in the 31st District Court of Wheeler County, naming Harbin, Terri Lee Palser, and Tim D. Eads as defendants (the Wheeler County defendants). In their lawsuit, the Campbells claimed ownership of the Wheeler County property by adverse possession. *See*

2

*Bywaters v. Gannon*, 686 S.W.2d 593, 595 (Tex. 1985). Thereafter, on October 12, 2021, Harbin filed a trespass-to-try-title suit against the Campbells in the Brown County Court.[1]

After Harbin filed the Brown County suit, the Wheeler County defendants filed a motion to transfer venue of the Wheeler County action to Brown County. *Harbin*, 2024 WL 3682791, at *1. Likewise, the Campbells filed a motion to transfer venue of the Brown County suit to Wheeler County.

On March 7, 2022, the 31st District Court signed an order denying the motion to transfer venue that was filed by the Wheeler County defendants. *Harbin*, 2024 WL 3682791, at *2. Approximately twenty months after the Wheeler County motion to transfer venue was denied, the Wheeler County defendants filed a petition for writ of mandamus in the Seventh Court of Appeals, requesting an order compelling the trial court to grant the motion. *Harbin*, 2024 WL 3682791 at *1. The court of appeals denied the petition, in part on the grounds that the Wheeler County defendants failed to act diligently in seeking mandamus relief. *Id.* at *2. In the course of issuing its ruling, the court also concluded that venue of the Campbells' claim of adverse possession was not mandatory in Brown County. *Id.* at *3.

After the Seventh Court of Appeals denied the Wheeler County defendants' petition, the Brown County Court entered an order denying the Campbells' motion to transfer venue of the Brown County action to Wheeler County. The Campbells then filed the instant petition for writ of mandamus. In their petition, the Campbells seek an order compelling Judge Britton to vacate his order denying the motion to transfer venue and to either (1) grant the motion to transfer venue or (2) grant a plea

---

[1]Harbin did not file the Brown County trespass-to-try-title suit in the probate proceeding. Instead, she filed it under a new cause number in the same court in which the probate proceeding was pending.

in abatement based on the dominant jurisdiction of the Wheeler County District Court.

## Mandamus

Mandamus is an "extraordinary" remedy that is "available only in limited circumstances." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). A writ of mandamus will issue only if the trial court clearly abused its discretion, and the relator has no adequate remedy on appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004). With respect to the first requirement, a trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). In addition, because a trial court has no discretion in determining what the law is or in applying it to the facts, a trial court abuses its discretion if it fails to correctly analyze or apply the law. *See Prudential*, 148 S.W.3d at 135; *see also In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 294 (Tex. 2016) (orig. proceeding).

## Venue

The Campbells assert in their first issue that the trial court clearly abused its discretion by denying their motion to transfer venue to Wheeler County because it is the county of mandatory venue. A party to a cause of action may file a motion to transfer venue along with its answer to a lawsuit. CIV. PRAC. & REM. § 15.063. In this instance, the Campbells filed a motion seeking to transfer venue of the Brown County suit to Wheeler County based on Section 15.011 of the Texas Civil Practice and Remedies Code, which provides that suits for recovery of real property or to quiet title to same "*shall* be brought in the county in which all or a part of the property is located." *Id.* (emphasis added).

4

A venue statute can be general, permissive, or mandatory. *Wilson v. Tex. Parks & Wildlife Dep't*, 886 S.W.2d 259, 260 (Tex. 1994). Because Section 15.011 *requires* suit to be brought in the county "in which all or a part of the property is located," the venue provision therein is mandatory. *See Perryman v. Spartan Tex. Six Capital Partners, Ltd.*, 546 S.W.3d 110, 131 (Tex. 2018) (recognizing Section 15.011 as a mandatory venue statute). Where a party seeks to transfer venue from a county of permissive venue to a county of mandatory venue, the trial court must grant the motion to transfer venue. *In re Fox River Real Estate Holdings, Inc.*, 596 S.W.3d 759, 762–63 (Tex. 2020) ("Permissive and general venue statutes always yield to mandatory venue statutes."). As such, absent a conflicting statute mandating venue in Brown County, it was the duty of the Brown County Court to grant the Campbells' motion to transfer venue. *See, e.g.*, *In re Fisher*, 433 S.W.3d 523, 535 (Tex. 2014).

Harbin contends that, notwithstanding the language in Section 15.011, the Brown County Court was acting within its discretion when it refused to transfer venue. Harbin bases this assertion on three arguments.

A. *Exclusive Jurisdiction*

First, Harbin claims that the Brown County Court's jurisdiction over the case is exclusive. "[E]xclusive jurisdiction is the power a court exercises over an action or person to the exclusion of all other courts." *In re Tyler Asphalt & Gravel Co., Inc.*, 107 S.W.3d 832, 838 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding), *disapproved on other grounds by Univ. of Tex. Rio Grande Valley v. Oteka*, No. 23-0167, 2025 WL 1668315, at *7 & n.51 (Tex. June 13, 2025). When a court exercises exclusive jurisdiction over a case, it is unnecessary to resolve venue disputes since the action in question cannot proceed in any other court. *See id.*

5

The Estates Code recognizes two categories of cases that are subject to probate court jurisdiction: "probate proceedings" and "matters related to the probate proceeding." TEX. EST. CODE ANN. § 32.001(a) (West 2020). With respect to the first category, "[a]ll probate proceedings must be filed and heard in a court exercising original probate jurisdiction." *Id*. With respect to the second category, "[t]he court exercising original probate jurisdiction also has jurisdiction" over "all matters related to the probate proceeding." *Id*. Thus, while "probate proceedings" *must* be brought in a court exercising original probate jurisdiction, "matters related to the probate proceeding" may, but are not necessarily required to, be brought in a court exercising original probate jurisdiction. *See id.*

Harbin argues that her lawsuit qualifies as a "probate proceeding" under any one of three components of the Estate Code's definition of the same term. *See id.* § 31.001. Harbin first argues that a "probate proceeding" includes a "petition, motion, or action regarding . . . an estate administration." *Id.* § 31.001(4). She reasons that, because her trespass-to-try-title suit "seeks to recover estate property," it is an "action regarding . . . estate administration." Second, and for similar reasons, Harbin asserts that her trespass-to-try-title suit is a claim "arising from an estate administration" under the Estate Code's definition of "probate proceeding." *Id.* § 31.001(5). Finally, Harbin asserts that her trespass-to-try-title suit is a "matter related to the settlement, partition, or distribution of [the] estate." *Id.* § 31.001(6).

When interpreting a statute, we must "ascertain and give effect to the Legislature's intent." *Bexar Appraisal Dist. v. Johnson*, 691 S.W.3d 844, 847 (Tex. 2024) (quoting *Odyssey 2020 Acad., Inc. v. Galveston Cent. Appraisal Dist.*, 624 S.W.3d 535, 540 (Tex. 2021)); *Butler v. City of Big Spring*, 652 S.W.3d 149, 152 (Tex. App.—Eastland 2022, pet. denied); *see also* TEX. GOV'T CODE ANN. § 312.005 (West 2013) ("[A] court shall diligently attempt to ascertain legislative intent.").

"We look for that intent first and foremost in the plain language of the constitutional or statutory provision." *Odyssey*, 624 S.W.3d at 540; *see also Butler*, 652 S.W.3d at 152. "If the statute's plain language is unambiguous, we interpret its plain meaning, presuming that the Legislature intended for each of the statute's words to have a purpose." *Johnson*, 691 S.W.3d at 847 (quoting *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019)); *see also Butler*, 652 S.W.3d at 152 ("[O]ur objective is to 'ascertain[] and giv[e] effect to the legislature's intent as expressed by the plain and common meaning of the statute's words.'" (quoting *Wichita Cnty. v. Bonnin*, 268 S.W.3d 811, 817 (Tex. App.—Fort Worth 2008, pet. denied))). Statutory terms that are not defined by the legislature "usually bear their common, ordinary meaning." *Johnson*, 691 S.W.3d at 847.

Additionally, although our task is to effectuate the legislature's intent, we do not "speculate on the Legislature's purpose," but instead attempt to give meaning to every word in a statute, harmonizing its provisions. *Hogan v. Zoanni*, 627 S.W.3d 163, 175 (Tex. 2021); *see also Kendrick v. Garcia*, 171 S.W.3d 698, 703 (Tex. App.—Eastland 2005, pet. denied) ("[W]e will not give an undefined statutory term a meaning that is out of harmony or inconsistent with other provisions in the statute.").

We conclude that Harbin's reliance on the definitions set out in Section 31.001 is misplaced for two reasons.

First, Harbin's application of these three components of the definition is inconsistent with the plain meaning of the statute. To qualify as a "probate proceeding," Harbin's lawsuit must (1) "regard[] . . . estate administration," (2) "aris[e] from an estate administration," or (3) be "related to the settlement, partition, or distribution of [the] estate." EST. § 31.001(4)–(6). While the subject of Harbin's lawsuit is a property that may be an asset belonging to the estate, and while

Harbin filed the petition in the exercise of her duties as administrator, the *subject* of her lawsuit is not the administration of the estate. For example, the lawsuit does not bear on Harbin's reporting requirements under the Estates Code, on her fitness to act as administrator, or on the probate court's approval of a final distribution of the estate. *See, e.g.*, Est. § 309.051 (reporting requirements for inventory and appraisement); *see id.* §§ 304.001, 362.001. Rather, Harbin's lawsuit is simply an action to establish title to a property that may happen to be part of the estate.

Additionally, Harbin's broad application of the subsections of the definition of "probate proceeding" does not adequately harmonize those components with the whole of the statutory scheme, which distinguishes jurisdiction between "probate proceedings" and "matters relating to probate proceedings." *Id.* §§ 31.001, 31.002, 32.001(a). The Estate Code's definition of "matters relating to [a] probate proceeding" includes, among other things: (1) "a claim brought by a personal representative on behalf of an estate," (2) "an action for trial of title to real property that is estate property," and (3) "an action for trial of the right of property that is estate property." *Id.* § 31.002(a)(3), (5), (6).

We recognize that the categories of jurisdiction that are described in Section 32.001(a) may sometimes overlap. However, if we were to adopt Harbin's broad interpretation of the definitional components of "probate proceeding," then the statutory language distinguishing "matters relating to probate proceedings" would be largely, if not entirely, superfluous. Any meaning attributed to "matters relating to probate proceedings" would be subsumed by the meaning of "probate proceeding," leaving no room for the legislature's designation of certain actions as proper, but not mandatory, in the courts that exercise original probate jurisdiction. *See* Est. § 32.001(a).

Harbin argues that her application of the components of the definition of "probate proceeding" at issue is consistent with *Narvaez v. Powell*, 564 S.W.3d 49 (Tex. App.—El Paso 2018, no pet.). In *Narvaez*, various parties to an estate administration in Probate Court No. 2 of El Paso County filed suit against the attorneys who represented them in the probate proceedings. 564 S.W.3d at 51–52. The claims against the attorneys were not filed in the probate court, but instead in the 34th District Court of El Paso County. *Id.* at 52. After the district court dismissed the claims therein for want of jurisdiction, the parties to the administration appealed. *Id.* at 53. The Eighth Court of Appeals determined that two of the causes of action in question were "probate proceedings" based on a number of factors, including the fact that the parties to the estate administration were seeking to recover distributions from the estate that had been issued to their attorneys, including conveyances of mineral interests. *Id.* at 55–56. In so holding, the court distinguished its facts from *In re Hannah*, 431 S.W.3d 801 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding), in which the Fourteenth Court of Appeals determined that a suit for interference with inheritance was not a "matter relating to a probate proceeding." *Id.*

*Narvaez* is inapplicable here. The subject of the litigation in that case was the wrongful distribution of estate assets, which directly involved the administration of the case itself. *Id.* at 55–57. In this case, the subject of the litigation is a property that may or may not be a part of the estate, and that has not yet been subject to distribution by the estate. Furthermore, and in any event, to the extent that the holding in *Narvaez* is inconsistent with our holding herein, we disagree.

We conclude that the components of the definition of "probate proceeding" that are at issue in this case do not extend to litigation seeking to establish the ownership of real property that is alleged to be an estate asset. For the same reason,

9

we reject Harbin's argument that the Brown County Court exercises exclusive jurisdiction[2] over the parties' competing claims of ownership of the property in question.

B. *Dominant Jurisdiction*

Harbin also argues that, if the Brown County Court's jurisdiction is not exclusive, it is still "dominant" over the jurisdiction of the Wheeler County District Court

"[W]hen suit would be proper in more than one county, the court in which suit is first filed acquires dominant jurisdiction to the exclusion of other courts." *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988); *see also J.B. Hunt*, 492 S.W.3d at 294; *In re Kelly*, No. 11-24-00066-CV, 2024 WL 2751280, at *2 (Tex. App.—Eastland May 30, 2024, orig. proceeding) (mem. op.).

The supreme court applied the doctrine of dominant jurisdiction to a case that is similar to this one in *In re Puig*, 351 S.W.3d 301 (Tex. 2011). In that case, several parties who claimed ownership to a ranch filed a lawsuit in a Webb County district court, challenging a title that had been claimed by an estate administrator. *Puig*, 351 S.W.3d at 303. The supreme court held that, because the will contest had been filed before the action in the district court, the probate court had acquired dominant jurisdiction over the dispute. *Id.* at 305 ("Because the administration of Alicia's estate was initiated well before the real parties filed their Webb County lawsuit, the Fort Bend county court clearly attained dominant jurisdiction over Alicia's estate and all matters appertaining and incident thereto.").[3]

---

[2]We also do not comment on or reach the question of whether the jurisdiction that is conferred under the first sentence of Section 32.001(a) is properly characterized as exclusive jurisdiction in this or any other instance. EST. § 32.001(a).

[3]The court ultimately denied the petition for writ of mandamus because the relators had filed a plea to the jurisdiction rather than a plea in abatement. *Id.* at 306. The court observed that a plea in abatement is the proper remedy when seeking a deferral to another court's dominant jurisdiction. *Id.* at 305.

"The dominant jurisdiction analysis is applicable, however, only when multiple suits are inherently interrelated and venue is proper in each county." *Wyrick v. Bus. Bank of Tex., N.A.*, 577 S.W.3d 336, 357 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *see also In re Red Dot Bldg. Sys., Inc.*, 504 S.W.3d 320, 322 (Tex. 2016) ("In instances where inherently interrelated suits are pending in two counties, and venue is proper in either county, the court in which suit was first filed acquires dominant jurisdiction.").

In this instance, venue is mandatory in Wheeler County. *See* CIV. PRAC. & REM. § 15.011. Accordingly, the doctrine of dominant jurisdiction is inapplicable.

C. *"Matter Related to Probate"*

Harbin also notes that the Brown County lawsuit qualifies as a "matter related to probate" under Section 32.001(a) of the Estates Code, and that the Brown County Court therefore "clearly has jurisdiction" over the case. Although Harbin correctly applies the law when she makes this observation, her argument fails to recognize the central issue that is in dispute.

Jurisdiction and venue are distinct concepts. *In re Parr*, 199 S.W.3d 457, 461 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding). "Jurisdiction concerns the authority of a court to try a case whereas venue has to do with the place or county where a case may be tried." *Id.*

There is no question that the Brown County Court can properly exercise jurisdiction over the Campbells' claim for trespass to try title. *See* EST. § 31.002(a) (3), (5) (6), (b)(1). However, the question posed in this matter is not whether the Brown County Court has *jurisdiction*, but whether the court abused its discretion when it refused to transfer *venue* to Wheeler County.

It is possible that Harbin intends to argue, as she did in the Seventh Court of Appeals, that, because the Estates Code provides statutory authority for the court to

11

exercise *jurisdiction* over the case, then *venue* must be fixed there as well. *See Harbin*, 2024 WL 3682791, at *3. We join with the Seventh Court of Appeals in rejecting this argument. *Id.* Harbin points to no provision in the Estates Code which fixes *venue* over this dispute in Brown County, and we are unaware of any such requirement.[4] *See id.* ("[T]he Harbins err in proposing that 'Section 32.001 of the Estates Code provides for mandatory venue in the probate court of all matters related to probate.'"). By contrast, Section 15.011 of the Civil Practice and Remedies Code clearly fixes venue of the case in Wheeler County. *See* Civ. Prac. & Rem. § 15.011.

*Waiver*

Finally, Harbin argues that, even if the Campbells would otherwise prevail on the merits of the motion, the Campbells waived their right to assert a motion to transfer venue.[5]

"Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Sun Expl. & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987); *see also Boren Descendants & Royalty Owners v. Fasken Oil & Ranch, Ltd.*, 703 S.W.3d 874, 891 (Tex. App.—Eastland 2024, pet. filed). In the context of venue, a waiver may occur when a party fails to file a motion

---

[4]The Estates Code includes a requirement that a probate proceeding must be brought in the county in which the decedent resided. Est. § 33.001(a)(1). However, as we have already indicated, the dispute between the Campbells and Harbin over the ownership of the Wheeler County property is not a "probate proceeding" but a matter "related to a probate proceeding." *See id.* 31.002(a)(3), (5), (6). The Estates Code addresses the question of venue in matters "related to a probate proceeding" pending in a *statutory probate court*, but that provision does not apply to county courts. *Id.* § 33.002. The Estates Code also addresses questions of venue in connection with cases "by or against a personal representative for personal injury, death, or property damages," heirship proceedings, and certain actions involving breach of fiduciary duty. *Id.* §§ 33.003–.005. However, it does not contain venue provisions, mandatory or otherwise, that apply to matters that are "related to a probate proceeding" that also involve title to or ownership of real property.

[5]Harbin also argues that the Campbells waived their right to assert a plea in abatement. Because we have determined that the trial judge erred when it denied the motion to transfer venue, it is not necessary for us to address the question of whether the plea in abatement should have been granted or the question of whether the plea in abatement was waived. *See* Tex. R. App. P. 52.8(d).

12

to transfer venue at the time of or prior to its original answer. TEX. R. CIV. P. 86(1) ("An objection to improper venue is waived if not made by written motion filed prior to or concurrently with any other plea, pleading or motion except a special appearance."). Additionally, venue can be waived by requests for certain types of relief that are inconsistent with maintaining venue. *Gentry v. Tucker*, 891 S.W.2d 766, 768 (Tex. App.—Texarkana 1995, no writ) ("A pending motion to transfer will be waived by actions invoking the judicial power of the court in a manner inconsistent with a continuing intention to insist upon the motion.").

In this case, Harbin alleges that the Campbells waived their right to pursue a motion to transfer venue based on their delay in seeking a hearing on the motion. In support of this argument, Harbin points out that, while the motion to transfer venue was filed in November 2021, no hearing was conducted until December 2024.

"The determination of a motion to transfer venue shall be made promptly by the court and such determination must be made in a reasonable time prior to commencement of the trial on the merits." TEX. R. CIV. P. 87(1). Furthermore, it is the duty of the movant to "request a setting on the motion to transfer." *Id.*

In support of her argument that the Campbells' delay in seeking a hearing constitutes a waiver, Harbin relies on *Whitworth v. Kuhn*, 734 S.W.2d 108 (Tex. App.—Austin 1987, no writ). In *Whitworth*, a defendant that had filed a motion to transfer venue did not request a hearing on the motion for over one year. 734 S.W.2d at 109. The trial court denied the motion to transfer and granted a motion for summary judgment that had been filed by the plaintiff, and the defendant appealed. *Id.* In addition to affirming the trial court's denial of the motion to transfer venue on the merits, the Third Court of Appeals determined that the trial court could also have denied the motion on the grounds that the defendant had delayed in requesting the hearing. *Id.* at 111. The court observed that "while a trial court may rule on a

13

venue motion without a hearing," the defendant's "complete lack of diligence [was] inconsistent with the purpose of Rule 87(1)." *Id.*

The holding in *Whitworth* mirrors similar sentiments from the Second Court of Appeals in *Grozier v. L-B Sprinkler & Plumbing Repair*, which indicated that "[t]he test is whether [the movant] has pursued a hearing on his motion" and that the trial court "is not required to wait upon the dallying of the movant . . . when no active effort has been made to obtain a ruling." *Grozier*, 744 S.W.2d 306, 312 (Tex. App.—Fort Worth 1988, writ denied) (emphasis omitted); *see also Innovative Mailing Sols., Inc. v. Label Source, Inc.*, No. 2-09-129-CV, 2010 WL 395219, at *2 (Tex. App.—Fort Worth Feb. 4, 2010, no pet.) (mem. op.) (The movant's delay, both before and after the hearing, in securing a ruling on the motion to transfer venue constituted a waiver of the issue.).

A finding of waiver is not appropriate when the record reflects circumstances that are not "inconsistent with an intent to pursue the venue motion." *In re Dole Food Co., Inc.*, 256 S.W.3d 851, 858–59 (Tex. App.—Beaumont 2008, orig. proceeding) (discussing *Whitworth*). The defendant in *Dole Food*, for example, did not waive its right to a hearing because the case had been stayed during an attempted removal to federal court, the response to the motion was filed at a later date, and service on its codefendant was also delayed. *Id.* at 858–59. Likewise, the Fifth Court of Appeals has held that a delay in seeking a hearing on a motion to transfer venue constituted a waiver, but only after considering (and rejecting) the movant's explanation for delay. *CMH Set & Finish, Inc. v. Taylor*, No. 05-14-01407-CV, 2016 WL 1254063, at *7 (Tex. App.—Dallas Mar. 31, 2016, pet. denied) (mem. op.) (holding that, among other things, waiver occurred as a result of a delay of eighteen months in seeking hearing); *see also Carlile v. RLS Legal Sols., Inc.*, 138 S.W.3d 403, 409 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (Even if the lack of

diligence and other actions were not alone sufficient, the actions of the movant as a whole resulted in waiver.).

Our sister courts of appeals do not universally agree that delay alone constitutes a waiver. *See, e.g.*, *Bristol v. Placid Oil Co.*, 74 S.W.3d 156, 160 (Tex. App.—Amarillo 2002, no pet.) ("[I]t *may be* that delay in obtaining a hearing provides grounds for the trial court to deny a motion to transfer.") (emphasis added); *see also Smith v. Smith*, 541 S.W.3d 251, 257 n.12 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (recognizing the holding in *Whitworth* and indicating that, because there were other indicia of waiver, "we need not decide whether [the defendant's] delay, standing alone, was sufficient to waive his venue objection"). In particular, the Thirteenth Court of Appeals appears to have rejected the notion that delay alone is sufficient, although it agrees that a lengthy delay can constitute a waiver where a hearing is not sought within a reasonable time prior to trial. *See In re Eastman Chem. Co.*, No. 13-18-00268-CV, 2019 WL 2529042, at *5 (Tex. App.—Corpus Christi–Edinburg June 20, 2019, orig. proceeding) (mem. op.) (rejecting argument of waiver based on delay of over four years between motion and hearing because, *inter alia*, "the case [had] not even been set for trial"); *see also In re Cortez*, No. 13-24-00342-CV, 2024 WL 3593522, at *5 (Tex. App.—Corpus Christi–Edinburg July 30, 2024, orig. proceeding) (mem. op.) (noting the requirement that the court must rule on the motion within "a reasonable time" prior to trial and rejecting argument that a five-month delay in requesting a hearing was sufficient to support a waiver); *Christus Health v. Ragsdale*, No. 13-10-00326-CV, 2011 WL 3854145, at *5 (Tex. App.—Corpus Christi–Edinburg Aug. 31, 2011, no pet.) (mem. op.) ("[T]he record shows [movant] requested a hearing on its motion to transfer venue . . . as the trial court was literally writing in missing information to complete its judgment in this case.").

Similarly, when we addressed the issue of waiver in *Gray v. Unifirst Corporation*, our assessment was not concerned with the length of delay per se, but with whether the movant therein sought a hearing on the motion "within a reasonable time before trial." No. 11-94-127-CV, 1995 WL 17212049, at *1 (Tex. App.— Eastland June 29, 1995, no writ) (noting that hearing on motion was not requested until after the parties received notice of a trial setting).

Consistent with our holding in *Gray*, and consistent with the text of Rule 87(1), we conclude that the length of a movant's delay in securing a ruling is not alone sufficient to support an argument of waiver. Instead, the trial court should consider whether the delay has resulted in a failure to dispose of the motion within "a reasonable time prior to commencement of the trial on the merits." TEX. R. CIV. P. 87(1). Under this approach, the movant has an ongoing duty to ensure that the trial court is aware of the pending motion so that it can dispose of the motion in a prompt manner. *Id.* However, a movant's neglect of this duty does not rise to the level of waiver until the delay has reached a point where it causes a corresponding delay in a disposition on the merits.

To the extent our holding is inconsistent with the holdings in cases such as *Whitworth* and *Grozier*, we disagree with the holdings in those cases on this issue.

In this case, the record does not indicate that the case was set for trial, nor was there evidence before the trial court that the Campbells' delay in securing a ruling had somehow interfered with the disposition of the case on its merits. Accordingly, the trial court abused its discretion to the extent that its denial of the motion to transfer venue was based on waiver.

Furthermore, even if we were to assess the facts of this case under the rubric set out in *Whitworth*, as Harbin urges, we would still conclude that the trial court abused its discretion in denying the motion. The record before the trial court

16

indicated that the Campbells were already pursuing relief in the Wheeler County District Court when Harbin filed suit against them in Brown County. It further indicates that, throughout the alleged period of delay, the Campbells were actively opposing the motion to transfer venue that Harbin had filed in Wheeler County, both in the district court and in the court of appeals. *See Harbin*, 2024 WL 3682791. That matter was not resolved until August 2024. *Id.*

Although there was no activity in the Brown County case for some time, the Campbells' actions reflect an ongoing desire to maintain venue in Wheeler County. Such actions are not "inconsistent with an intent to pursue the venue motion." *See In re Dole*, 256 S.W.3d at 858–59. Accordingly, even under the standard enunciated in *Whitworth*, the trial court abused its discretion to the extent that it determined that the Campbells waived venue in Brown County.

### *Adequacy of Remedy by Appeal*

A party seeking mandamus is ordinarily required to show that it has no adequate remedy by appeal. *Prudential*, 148 S.W.3d at 135–36. However, where a party seeks mandamus compelling transfer based on a mandatory venue statute, a showing of an inadequate remedy by appeal is unnecessary. *In re Missouri Pac. R. Co.*, 998 S.W.2d 212, 216 (Tex. 1999) (Because legislature intends "a result of feasible execution" in connection with its laws, "we conclude that adequacy of an appellate remedy is not a requisite of a mandatory venue mandamus." (quoting GOV'T § 311.021(4))); *In re Hartford Underwriters Ins. Co.*, 168 S.W.3d 293, 295 (Tex. App.—Eastland 2005, orig. proceeding). As such, we do not consider whether the Campbells have an adequate remedy by appeal.

### *Issue Preclusion*

In their petition for writ of mandamus, the Campbells argue that, because the Seventh Court of Appeals has already determined that venue is mandatory in

Wheeler County, Harbin is precluded from relitigating the issue in the Brown County Court. *See In re USAA Gen. Indem. Co.*, 629 S.W.3d 878, 883 (Tex. 2021). Because our opinion is consistent with that of the Seventh Court of Appeals, we need not address the question of whether the decision of that court precludes further litigation of the same issues in Brown County. Likewise, we need not address Campbells' arguments concerning the risk of inconsistent verdicts or judgments.

## *Conclusion*

We join with the Seventh Court of Appeals in concluding that the Brown County Court does not have exclusive or mandatory jurisdiction over Harbin's claim for trespass to try title. *See Harbin*, 2024 WL 3682791, at *3 & n.2. We further conclude that venue of Harbin's claims is mandatory in Wheeler County under Section 15.011 of the Civil Practice and Remedies Code. *See id*. We sustain the Campbells' first issue. Because of our disposition of this issue, we do not reach the Campbells' second issue challenging the denial of their plea in abatement. *See* TEX. R. APP. P. 47.1, 52.8(d) ("Rule 47 is applicable to an order or opinion by a court of appeals" in an original proceeding.).

## *This Court's Ruling*

We conditionally grant the petition for writ of mandamus and direct the trial court to vacate its order denying the motion to transfer venue. Likewise, we direct the trial court to render an order in which it grants the Campbells' motion to transfer venue. A writ of mandamus will issue only if Judge Britton fails to act by August 22, 2025.

JOHN M. BAILEY

August 7, 2025            CHIEF JUSTICE

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

18